# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ORTH CAROLINA
### WINSTON-SALEM DIVISION
### Case No. 1:17-CV-1080

| | | |
|---|---|---|
| **ADVANCED FRAUD SOLUTIONS, LLC,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **BRIEF SUPPORTING MOTION TO DISMISS** |
| **CORE TECHS, INC.,** | ) ) ) | |
| **Defendant.** | ) | |

## BRIEF SUPPORTING MOTION TO DISMISS BY DEFENDANT CORE TECHS, INC.

NOW COMES Defendant Core Techs, Inc. ("Core Techs"), by and through counsel, and submits this Brief in support of its motion to dismiss the Complaint for failure to state a claim upon which relief can be granted.

## STATEMENT OF THE CASE

On November 30, 2017, Plaintiff Advanced Fraud Solutions, LLC ("Plaintiff" or "AFS"), filed a Complaint that does not state a claim against Core Techs. Doc. 1. Because the Complaint lacks allegations of essential elements of each claim against Core Techs, or otherwise fails to make plausible allegations of wrongdoing, the Complaint is insufficient to survive a motion under Rule 12(b)(6) and should be dismissed.

## STATEMENT OF RELEVANT FACTS ALLEGED BY PLAINTIFF

The Complaint sets out certain factual allegations, which are treated as true (except those contradicted by the Complaint or documents attached thereto, or that consist merely

of unwarranted inferences, unreasonable conclusions, or arguments) solely for the purpose of testing the legal sufficiency of Plaintiff's claims:

## BACKGROUND AND RELATIONSHIP OF THE PARTIES

Core Techs develops custom software for companies. Compl. ¶ 4.

Core Techs is a 20% owner of AFS. Compl. ¶ 5.

AFS engaged Core Techs to develop and support two software packages that were later branded and marketed as TRUECHECKS and TRUECARDS (collectively, "Fraud Software" and "Registered Marks"). Compl. ¶ 10. Core Techs developed the Fraud Software. E.g., Compl. ¶ 14.

On or about January 1, 2015, AFS and Core Techs signed a "Master Services Agreement," ("MSA"), a copy of which is attached to the Complaint. Compl. ¶ 10.

The MSA contains a number of provisions that speak for themselves. Doc. 1-1.

In July 2017, Core Techs notified AFS of its desire to sell its interest to AFS, but negotiations failed. On or about August 31, 2017, AFS attempted to purchase Core Techs's membership interest in AFS. On or about September 1, 2017, Core Techs verbally cancelled the MSA and informed AFS it would no longer do any work for AFS, effective immediately. Compl. ¶¶ 46-49.

## CONCLUSORY ALLEGATIONS OF TRADEMARK INFRINGEMENT AND FALSE ADVERTISING

AFS registered the TRUECHECKS and TRUECARDS marks on February 1, 2011. Compl. ¶¶ 20-23. AFS did not grant Core Techs permission to use the Registered Marks. Compl. ¶ 26.

Core Techs used the Registered Marks, which created confusion about who owned the Registered Marks. Compl. ¶ 27. The Complaint does not show how Core Techs used the Registered Marks.

Core Techs used the Registered Marks in an unspecified manner in its solicitations of customers, which created unspecified confusion in the market and among AFS's customers. Compl. ¶ 32. The only confusion identified by the Complaint is confusion as to the source of the Fraud Software. Compl. ¶ 34. Core Techs used the Registered Marks in e-mail communications, marketing and advertising, and on its website. Compl. ¶ 72.

In some solicitations, Core Techs represented it was a "sister company" of AFS. Compl. ¶ 30.

## CONCLUSORY ALLEGATIONS OF FRAUD

AFS sought Core Techs's assistance to develop software referred to as Branch Capture. Compl. ¶ 39. AFS paid Core Techs for development of Branch Capture. Compl. ¶ 40. Over a 30-month period, Core Techs assured AFS that Branch Capture was viable and could be completed, but did not deliver a final product. Compl. ¶ 41. Core Techs informed AFS that Branch Capture "was a failed venture" and opined "that it should be abandoned." *Id.* AFS realized a loss of its investment in Branch Capture. Compl. ¶ 42.

Core Techs developed Branch Capture and has used or is planning to use it. Compl. ¶¶ 43-44. Core Techs has offered AFS customers Branch Capture or a similar product under a different name, performing the same function. Compl. ¶ 45.

AFS provided to Core Techs a list of AFS's contracts by client, including inception date, annual fees, and expiration date of contracts along with a list of AFS's top 10 list of

clients by contract value from 2014-2016, in response to a request from Core Techs that was ostensibly based on an audit request. Compl. ¶ 29. Core Techs used the information for purposes other than to respond to an audit request. *Id.* Core Techs used AFS's customer list to solicit business and compete with AFS. Compl. ¶ 35.

In spring of 2017, Core Techs began soliciting business from AFS customers, which was in whole or in part competitive with AFS. Core Techs represented it was a "sister company" of AFS. Compl. ¶ 30.

## CONCLUSORY ALLEGATIONS AS TO OTHER CAUSES OF ACTION

As of the date the MSA was cancelled, Core Techs retained possession of certain items, including code, necessary for AFS to implement, support, and modify the Fraud Software, which items were on servers located at Core Techs's corporate offices. Compl. ¶ 52.

Core Techs agreed to transfer the items to AFS. Compl. ¶ 53. Core Techs provided servers which contained the items sought by AFS, but AFS could not access the servers. Compl. ¶ 54; *see* Compl. ¶ 58.

When AFS sought additional assistance from Core Techs to access the servers, Core Techs sought additional compensation and a release of claims. Compl. ¶ 55. When AFS failed to grant Core Techs a release, Core Techs declined to provide additional assistance. Compl. ¶ 57.

AFS discovered the servers had been compromised in some unspecified manner. Compl. ¶ 58. Core Techs did not properly secure open ports by specific IP address or IP

range. *Id.* Core Techs failed to use secure passwords. *Id.* AFS could not access the servers. *Id.*

Core Techs failed to provide certain items, including the Fraud Software, to AFS, other than on the servers. Compl. ¶ 60.

AFS eventually did access the Fraud Software, but the software did not operate correctly and Core Techs would not assist AFS with the problems that arose. Compl. ¶ 62. Core Techs refused to provide assistance to AFS to obtain all copes of the Fraud Software. Compl. ¶ 64. Core Techs continues to possess a copy of the Fraud Software, Branch Capture, and related source code and materials, and is using AFS's property for its own benefit. Compl. ¶ 65.

As of November 30, 2017, AFS still had not received a complete and operational version of the Fraud Software, Source Code, and work materials. Compl. ¶ 66.

In competing with AFS, Core Techs was motivated to obtain business for itself. Compl. ¶ 37.

AFS alleges it has lost business, revenue, and that its customer relationships have been damaged, and it has lost sales and market share it otherwise would have captured.

Based on these minimal factual allegations, AFS asserts claims including trademark infringement, Lanham Act violations, unfair and deceptive trade practices, breach of contract, gross negligence, fraud, and tortious interference with business relations and expectancies, and seeks punitive damages and preliminary and permanent injunctions.

## QUESTION PRESENTED

Does the Complaint lack sufficient factual allegations to survive a motion to dismiss?

## ARGUMENT

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also, e.g.*, *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009) (citing *Iqbal* and *Twombly*). The Court may consider documents attached to the complaint. Fed. R. Civ. P. 10(c); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). To state a claim that is "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Although the Court accepts all well-pleaded factual allegations as true and construes the facts in the light most favorable to the plaintiff, a pleading that offers nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 679). A plaintiff "must 'nudge [his] claims across the line from conceivable to plausible'" in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Van Leer v. Deutsche Bank Sec., Inc.*, 479 Fed. App'x 475, 479 (4th Cir. 2012). Plaintiff must provide more than "unwarranted inferences, unreasonable conclusions, or arguments" to state a claim sufficient to survive a motion to dismiss. *Nemet Chevrolet*, 591 F.3d at 255.

## ARGUMENT

Plaintiff fails to meet the pleading standards spelled out in *Twombly* and *Iqbal*. The Complaint's allegations are substantively deficient as to all claims against Core Techs as discussed in detail in the following sections.

### I. AFS fails to state a claim arising under federal law.

### A. AFS fails to state a claim for trademark infringement.

To state a claim under 15 U.S.C. § 1114, a plaintiff must allege the defendant (1) used a mark possessed by the plaintiff (2) "'in connection with goods or services' in a manner that is 'likely to cause confusion' among consumers as to the goods' or services' source or sponsorship." 15 U.S.C. § 1114(a)(1); *see Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 322-25 (4th Cir. 2015); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to specify the nature of the alleged use "does not give defendants fair notice of the claims against them and does not show . . . that [the plaintiff] is entitled to relief." *Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307-08 (2d Cir. 2006). Similarly, conclusory allegations regarding likelihood of confusion do not comply with Rule 8 and are insufficient to survive a motion to dismiss. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 611 (6th Cir. 2009). "[T]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally . . . . because a trademark only gives the right to prohibit the use of it so far as to protect the

owner's good will against the sale of another's product <u>as his</u>." *Radiance Found.*, 786 F.3d at 324 (quotations omitted) (emphasis added).

Plaintiff fails to plead any facts showing that Core Techs made a "trademark use" of Plaintiffs' marks (element (2) of the trademark claim). Plaintiff does not allege how the marks were used and the claim therefore fails as a matter of law. *See Dow Jones*, 451 F.3d at 307-08.

Moreover, Plaintiff alleges no facts showing that Core Techs' alleged use of Plaintiff's Registered Marks created or is likely to create confusion about the source of the <u>goods or services offered by Core Techs</u> or specifically confusion that the source of the goods or services offered by Core Techs is AFS or is endorsed by AFS. Plaintiff alleges only that Core Techs "used the Registered Marks . . . on its public website to promote itself," Compl. ¶ 27; "created confusion about who owned the Registered Marks," *id.*; "used the Registered Marks in its solicitations of customers" which "created significant confusion in the market," Compl. ¶ 32; "caused customers to be confused as to the source of the Fraud Software," Compl. ¶ 34; "used the Registered Marks for its benefit," Compl. ¶ 72; and "caused AFS's customers to be confused as to the source of the Fraud Software," Compl. ¶ 74. To the extent Plaintiff alleges anything beyond formulaic recitations of "confusion" or "likelihood of confusion"—which are insufficient to support a claim, *Twombly*, 550 U.S. at 555; *Hensley Mfg.*, 579 F.3d at 611—Plaintiff's allegations are limited to claims that some consumers were confused about the source of <u>Plaintiff's goods and services</u> or about <u>who owned Plaintiff's trademarks</u>. Neither kind of confusion is

relevant to a trademark claim. *Radiance Found.*, 786 F.3d at 324. This claim fails as a matter of law and should be dismissed.

## B. AFS fails to state a Lanham Act Section 43(a) claim.

The basis of Plaintiff's Section 43(a) claim is unclear, and as such it fails to comport with Rule 8's requirement that Core Techs receive fair notice of the claims against it. Plaintiff designates the claim as one for "unfair competition and false designation of origin." Compl. at 14.

Paragraph 79 does not state or support a claim under section 1125(a), which relates to the use of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact." 15 U.S.C. § 1125(a).

As to the allegation in paragraphs 80 and 81, Plaintiff appears to attempt to state a claim for false advertising. The claim fails. To state a claim for false advertising, a Plaintiff must allege

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (quotation omitted). As to paragraph 81, Plaintiff makes a bare allegation that Core Techs "made false statements regarding its involvement and role with the TRUECHECKS® and

TRUECARDS® Fraud Software" but does not say what the statements were. As such, the paragraph is a mere formulaic recitation of the elements of a claim for false advertising that cannot survive a motion to dismiss. Fed. R. Civ. P. 8(a); *see Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 557; *Francis*, 588 F.3d at 193.

As to paragraph 80, Plaintiff's allegation that Core Techs "made false statements . . . regarding its association to AFS as a sister company" fails to plausibly identify a false, misleading, or material misrepresentation. Plaintiff relies on a pedantic interpretation of the phrase "sister company" to support this claim. As discussed in the Complaint, Core Techs owns a 20% interest in Plaintiff, Compl. ¶ 5, and developed and supported the Truechecks and Truecards software for AFS during an almost 10-year period, Compl. ¶ 10—that is, Core Techs is a corporate affiliate of AFS and had a close working relationship with AFS with respect to developing the Truechecks and Truecards software. "Sister" means "one that is closely similar to or associated with another" as in "sister cities." *Sister*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/sister (last visited Jan. 18, 2018). Under any common sense, non-technical understanding of the phrase, Core Techs indisputably is a "sister company" of AFS.

Even under a strict technical application of the term "sister company," the alleged statements are not materially misleading. "Sister companies"—i.e., two subsidiaries of the same parent company—may have nothing to do with each other, and as a result the technical phrase is essentially meaningless as to the closeness of a relationship between companies. For example, GEICO, Dairy Queen, and Duracell are all technically "sister

companies."[1]  Common ownership thus reveals nothing about actual associations among companies.  Again, Core Techs is a corporate affiliate of AFS that helped develop the Fraud Software.  To the extent customers understood the term "sister company" as suggesting some meaningful affiliation between Core Techs and AFS, as shown by the Complaint, that affiliation in fact existed and the phrase is not materially misleading.

Accordingly, the Lanham Act claim should be dismissed.

### C. The Court should decline to exercise supplemental jurisdiction over AFS's state law claims.

Because Plaintiff's deficient trademark and Lanham Act claims are the only claims involving a federal question, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. 28 U.S.C. § 1367(c)(3); *see Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  Dismissal is particularly appropriate here, where suit was brought by AFS as part of its improper efforts to acquire Core Techs's ownership share of AFS at a price below fair market value.  *See* Def.'s Opp. Mot. Prelim. Injunction, (Doc. 15), at pp. 8-11.  In any event, as discussed below, Plaintiff's state law claims fail on the merits.

### II.     AFS fails to state a claim for relief under North Carolina law.

### A. AFS's fraud claim fails.

Under North Carolina law, "the following essential elements of actual fraud are well established: '(1) False representation or concealment of a material fact, (2) reasonably

---

[1] Links to Berkshire Hathaway Sub. Companies, http://www.berkshirehathaway.com/subs/sublinks.html (last visited Jan. 16, 2018).

calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Forbis v. Neal*, 361 N.C. 519, 526-27, 649 S.E.2d 382, 387 (2007) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). The false representation must be of a "subsisting or ascertainable fact, as distinguished from a matter of opinion or representation relating to future prospects." *Ragsdale*, 286 N.C. at 139, 209 S.E.2d at 500. The complaint must allege actual and reasonable reliance on the alleged misrepresentation. *Forbis*, 361 N.C. at 527, 649 S.E.2d at 387.

Moreover, under federal law, the circumstances of fraud must be pleaded with particularity, Fed. R. Civ. P. 9(b); the plaintiff must identify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). "This heightened pleading requirement serves to protect defendants' reputations from baseless accusations, eliminate meritless suits brought only to extract a settlement, discourage fishing expeditions, and provide defendants with enough information about a plaintiff's allegations to mount a defense." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 546 (4th Cir. 2017). "[P]leading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co.*, 740 F. Supp. 2d 694, 705 (M.D.N.C. 2010) (quotation omitted).

Plaintiffs' claims fall far short of both the particularity requirements of Rule 9(b) and the substantive requirements of North Carolina law.

Plaintiff's allegation that Core Techs made false representations to "the public and AFS customers," Compl. ¶ 107, does not support a fraud claim by <u>Plaintiff</u> because there is no plausible allegation of intent to deceive Plaintiff or any reliance by Plaintiff on the alleged misrepresentations. Furthermore, as explained above, Plaintiff does not allege any material misrepresentations made to the public or AFS customers. Accordingly, any claim based on this allegation fails.

Plaintiff's allegation, made "[u]pon information and belief," that Core Techs "misrepresented that it needed certain categories of information . . . to respond to an audit request," Compl. ¶ 108, also fails to support a fraud claim. First, the Complaint is devoid of facts regarding the time, place, and content of the representations, and the identity of the person making them, and therefore fails to satisfy the particularity requirements of Rule 9(b). *See Harrison*, 176 F.3d at 784. Second, Plaintiff sets forth no facts upon which its "belief" is based. *N.C. Farmers' Assistance Fund*, 740 F. Supp. 2d at 705. Third, Plaintiff does not allege that the unspecified statement regarding an audit was false or any facts indicating it was false; rather, Plaintiff's contention is that Core Techs <u>also</u> used the requested information for other purposes. Fourth, Plaintiff does not plausibly allege the "audit" statement was material to AFS's decision to give detailed customer information to Core Techs without restriction as to its use; Plaintiff pleads no facts showing how the Core Techs "audit request" could possibly induce AFS to provide information that it would otherwise have kept secret from Core Techs. Fifth, Plaintiff fails to plead actual or

reasonable reliance on the alleged "audit request" statement; according to the Complaint, AFS simply handed over the requested information without requiring Core Techs to limit its use of the information. Accordingly, any claim based on this allegation fails.

Plaintiff's allegations regarding Branch Capture—made "[u]pon information and belief," Compl. ¶ 110— also fail to state a fraud claim. First, Plaintiff fails to satisfy the specificity requirements of Rule 9(b) by failing to identify the time, place, and content of the representations, and the identity of the person making them. *See Harrison*, 176 F.3d at 784. The Complaint lacks any factual allegations showing that information whether or not Branch Capture was a "failed venture" was uniquely within Core Techs's control; on the contrary, Branch Capture was intended to be an AFS product marketed and sold by AFS. Compl. ¶ 39. AFS was in the best position to know whether Branch Capture was or was not a "failed venture," and AFS cannot plead "[u]pon information and belief" that Core Techs's statements in this regard were false. Second, the only alleged misrepresentation is the vague statement that "Branch Capture was a failed venture." Compl. ¶¶ 41, 110, 114. Plaintiff does not allege Core Techs represented that the technology did not function or could not be made to function, or that Core Techs was unwilling or unable to produce a final product. Rather, the alleged statement is merely an opinion regarding the business prospects of Branch Capture, which cannot support a fraud claim. *See Ragsdale*, 286 N.C. at 138, 209 S.E.2d at 500. Third, the alleged statement came <u>after</u> AFS allegedly invested $1.3 million, Compl. ¶¶ 40-42, and Core Techs could not have caused any alleged investment losses. Whatever contractual rights AFS had to Branch Capture continued to exist regardless of any Core Techs statements. Fourth, Plaintiff fails to plead facts showing

reasonable reliance because, as discussed AFS was in the best position to know whether Branch Capture was or was not a "failed venture," and any reliance on the alleged Core Techs statement was patently unreasonable.

Accordingly, the fraud claim should be dismissed.

## B. AFS's tortious interference claim fails.

"[U]under North Carolina law, claims for tortious interference with business relations and prospective business relations are understood to be claims for tortious interference with contract and prospective contract, respectively." *Superior Performers, Inc. v. Phelps*, 154 F. Supp. 3d 237, 248 (M.D.N.C. 2016). To state a claim for tortious interference with contract, a plaintiff must allege

> 1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of that contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). "[T]o state a claim for wrongful interference with prospective advantage, the plaintiffs must allege facts to show that the defendants acted without justification in inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." *Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000) (quotation omitted). "Interference with a contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors." *Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC*, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016) (quotation omitted).

Plaintiff fails to allege facts supporting a claim of tortious interference with contract or prospective contract, but merely makes a boilerplate recitation of elements of these claims "[u]pon information and belief." Compl. ¶¶ 118-21. Such claims cannot survive a motion to dismiss. *See Francis*, 588 F.3d at 193.

Plaintiff fails to allege the existence of any contract with a third person who was induced not to perform, and any claim for tortious interference with contract fails. Plaintiff also fails to allege facts showing the existence of any prospective contract that would have ensued but for the interference, and any claim for interference with prospective contracts fails. *See, e.g.*, *Superior Performers*, 154 F. Supp. 3d at 249-50.

Plaintiff also fails to plausibly allege that Core Techs acted without justification. Plaintiff explicitly pleads that Core Techs sought to obtain business for itself as a competitor of AFS. Compl. ¶ 120. Such actions would be justified as a matter of law. *See Beverage Sys.*, 368 N.C. at 700, 784 S.E.2d at 462. This is particularly true here, where there was no non-compete agreement and the MSA specifically reserved to Core Techs "the right to develop, use and distribute works that perform functions the same as or similar to the Deliverables." Doc. 1-1 at 2.

Accordingly, the tortious interference claim should be dismissed.

### C. AFS's gross negligence claim fails.

To state a claim for gross negligence, a plaintiff must plead facts supporting the elements of negligence—duty, causation, proximate cause, and damages—and also facts showing that the alleged acts constitute "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482,

574 S.E.2d 76, 92 (2002) (quotation omitted). Furthermore, under North Carolina's economic loss doctrine, "'no negligence claim exists where all rights and remedies have been set forth in [a] contractual relationship.'" *Beaufort Builders, Inc. v. White Plains Church Ministries, Inc.*, __ N.C. App. __, 783 S.E.2d 35, 39 (2016) (quoting *Williams v. Houses of Distinction, Inc.*, 213 N.C. App. 1, 4, 714 S.E.2d 438, 440 (2011)).

First, Plaintiff identifies no duty that was violated (other than supposed contractual duties) or any damages that were proximately caused by Core Techs.

Second, the claim is barred by the economic loss doctrine. Plaintiff explicitly pleads that the allegedly negligent acts were breaches of contractual duties. Compl. ¶¶ 96-100. Plaintiff pleads that the resulting damage was failure to receive performance allegedly due under the MSA. Compl. ¶¶ 102-03. To the extent Plaintiff pleads other damages, the MSA provides that "in no event shall Core Techs be liable to [AFS] . . . for any indirect, consequential or special damages, including any claims for lost profits." Doc. 1-1 at 2. Thus, the parties contractually allocated to AFS the risk of indirect damages resulting from nonperformance. Accordingly, the gross negligence claim is barred by the economic loss doctrine, and should be dismissed.

### D. AFS's breach of contract claim fails.

Under North Carolina law, the elements of a breach of contract are "(1) existence of a valid contract and (2) breach of the terms of the contract." *Highland Paving Co. v. First Bank*, 227 N.C. App. 36, 40, 742 S.E.2d 287, 291 (2013) (quotation omitted). A contract provision that "leav[es] material portions open for future agreement is nugatory

and void for indefiniteness." *Mountain Fed. Land Bank v. First Union Nat'l Bank*, 98 N.C. App. 195, 200, 390 S.E.2d 679, 682 (1990) (quotation omitted).

In paragraph 91(a), Plaintiff alleges Core Techs "disclos[ed] confidential materials and information to third parties," but the Complaint does not identify any confidential materials or information that were disclosed by Core Techs.

In paragraph 91(b), Plaintiff alleges that Core Techs "us[ed] and obtain[ed] AFS's customer information for reasons other than its performance under the terms of the MSA." By its plain terms, the MSA's confidentiality requirement applies only to "materials or information that [Core Techs] . . . will come into the possession and knowledge of in connection with [the MSA] or the performance" of the MSA. Thus, the MSA does not apply to materials obtained for purposes outside the MSA or performance of the MSA, such as the customer lists allegedly provided by Plaintiff. Compl. ¶ 29. Accordingly, there is no breach of contract with respect to these materials.

In paragraph 91(c), Plaintiff alleges that Core Techs "ma[de] false claims regarding its relationship to AFS, the Fraud Software, and related work materials," but this does not plausibly violate any contractual duty owed to Plaintiff. In any event, as explained above, Plaintiff has not alleged any false or materially misleading statements made by Core Techs. Accordingly, this claim fails.

In paragraph 91(d), Plaintiff alleges that Core Techs failed "to transfer all Deliverables, Source Code and related work materials upon its termination of the MSA." However, Plaintiff acknowledges that Core Techs provided servers containing "the Deliverables, Source Code and other work." Compl. ¶ 57. Accordingly, this claim fails.

In paragraph 91(e), Plaintiff alleges that Core Techs failed "to assist or support AFS in accessing all Deliverables, Source Code, and related work materials upon the termination of the MSA." But the MSA contains no terms requiring Core Techs to "assist" or "support" AFS in accessing any materials. Accordingly, this claim fails.

In paragraph 91(f), Plaintiff alleges that Core Techs failed "to protect the confidentiality of the Deliverables, Source Code and work materials," but does not allege that any third party actually gained access to any such information. Rather, Plaintiff alleges only that a server was "compromised." Compl. ¶ 58. Accordingly, this claim fails.

In paragraph 91(g), Plaintiff alleges that Core Techs used AFS's materials and information to compete against AFS, "including, but not limited to the development of Branch Capture." The Complaint does not allege the use of any materials or information in competition with AFS except for "the development of Branch Capture." Compl. ¶ 91(g). Plaintiff does not explain how Core Techs used "the development of Branch Capture." Plaintiff does allege that Core Techs has offered AFS customers "Branch Capture or a similar product under a different name." Compl. ¶ 45. Plaintiff's allegations with respect to Branch Capture depend on interpreting the term "Deliverables" in the MSA to include Branch Capture, but no provision of the MSA identifies Branch Capture as a "Deliverable." To the extent Branch Capture is a "Deliverable" under the MSA, the MSA specifically reserved to Core Techs "the right to develop, use and distribute works that perform functions the same as or similar to the Deliverables." Doc. 1-1 at 2.

Accordingly, AFS's breach of contract claim fails and should be dismissed.

**E. AFS's unfair and deceptive trade practices claim fails.**

To state a claim under N.C. Gen. Stat. § 75-1.1, "a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71-72, 653 S.E.2d 393, 399 (2007) (quotation omitted); *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "[S]ection 75-1.1 does not . . . apply to an individual who merely breaches a contract." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013); *Mitchell v. Linville*, 148 N.C. App. 71, 74, 557 S.E.2d 620, 623 (2001).

Plaintiff claims that Core Tech's "unauthorized use of AFS's trademarks, customer lists, Deliverables, Source Code and technology to directly compete with AFS; false advertising; purposeful injury to AFS in the manner of transfer of its property; false representation of [Core Tech's] relationship to AFS" constitute unfair and deceptive trade practices. This claim fails.

As discussed, Core Tech's alleged use of AFS's trademarks does not infringe on any of AFS's rights as a trademark owner and cannot support a section 75-1.1 claim.

Core Tech's alleged use of AFS's customer lists does not give rise to a section 75-1.1 claim. As alleged, AFS provided a list of its customers to Core Techs with the understanding that it would be used for an audit, which is not a purpose covered by the MSA. *See* Compl. ¶ 29; Doc. 1-1. Plaintiff does not allege that Core Techs agreed or represented it would limit its use of the list or that Core Techs owed any duty of confidentiality outside the MSA. *Id.* Accordingly, even assuming Core Techs subsequently used the list for other purposes, nothing about that use was unfair or deceptive.

Plaintiff does not plausibly allege that Core Techs made unauthorized use of any "Deliverables," "Source Code," or "technology." There are no facts supporting Plaintiff's vague allegation of "unauthorized use," and nothing to show that such use, even if unauthorized, (1) was "in and affecting commerce" or (2) constituted anything more than a breach of contract.

Plaintiff has not made any plausible allegation of false advertising. As explained above regarding Plaintiff's Lanham Act Section 43(a) claim, Core Tech's alleged use of the phrase "sister company" is not false or materially misleading.

Plaintiff's allegation that Core Techs purposefully injured AFS "in the manner of transfer of its property" cannot support a section 75-1.1 claim because it is nothing more than an allegation that Core Techs intentionally breached its contract with AFS. "Neither an intentional breach of contract nor a breach of warranty . . . constitutes a violation of Chapter 75." *Mitchell*, 148 N.C. App. at 74.

In sum, AFS's section 75-1.1 claim should be dismissed.

## CONCLUSION

Because Plaintiff has failed to plead facts supporting any claim on which relief can be granted, the Complaint should be dismissed in its entirety.

Respectfully submitted, this the 22nd day of January, 2018.

_____/s/ Matthew B. Tynan_____
Jennifer K. Van Zant
jvanzant@brookspierce.com
N.C. State Bar No. 21280
Clint S. Morse
cmorse@brookspierce.com
N.C. State Bar No. 38384

Matthew B. Tynan
mtynan@brookspierce.com
N.C. State Bar. No. 47181
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC  27401
Telephone:  336-373-8850
Facsimile:   336-378-1001

*Counsel for Defendant Core Techs, Inc.*

## <u>CERTIFICATION AS TO WORD LIMITATION</u>

Pursuant to Local Rule 7.3(d), the undersigned hereby certifies this brief contains fewer than 6,250 words (as determined by the word count of Microsoft Word).

This the 22nd day of January, 2018.

/s/ Matthew B. Tynan
Matthew B. Tynan

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 22, 2018, the foregoing **Brief Supporting Motion to Dismiss** was electronically filed using the CM/ECF system, which sends notification of such filing to all counsel of record so registered for this case.

This the 22nd day of January, 2018.

/s/ Matthew B. Tynan
Matthew B. Tynan