IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ADVANCED FRAUD SOLUTIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:17CV1080 |
| CORE TECHS, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Advanced Fraud Solutions ("AFS") initiated this action against Core Techs ("CT") alleging seven claims, including claims of trademark infringement pursuant to §§ 32 and 43(a) of the Lanham Act, along with various state law claims. (ECF No. 1.) Before the Court are Plaintiff AFS's Motion for Preliminary Injunction and Expedited Discovery, (ECF No. 10); and Defendant CT's Motion to Dismiss, (ECF No. 17). For the reasons stated below, CT's motion to dismiss will be granted, and AFS's Motion for Preliminary Injunction and Expedited Discovery will be denied as moot.

**I.    BACKGROUND**

AFS is a North Carolina limited liability company that provides fraud mitigation tools to financial companies, and CT is a North Carolina corporation that develops custom software for companies. (ECF No. 1 ¶¶ 1–4.) AFS contracted with CT to develop and support two software packages designed to detect fraudulent checks and credit card transactions. (*Id.* ¶ 10.) The software packages, (the "Fraud Software"), were branded and marketed as

TRUECHECKS® and TRUECARDS® (the "Registered Marks").[1] (*Id.* ¶¶ 10, 20–23.) AFS holds the federally registered trademark for each. (*Id.* ¶¶ 20, 22.) In addition to serving as a vendor for AFS, CT owns a 20% share of AFS. (*Id.* ¶ 5.) The two companies' contractual relationship was governed by a Master Services Agreement ("MSA"). (*Id.* ¶ 10.) As part of the MSA, CT agreed that AFS was the sole owner of the Fraud Software and any other products that CT developed on behalf of AFS. (*Id.* ¶ 14.)

The Complaint alleges, among other things that, "under the guise of responding to [an] audit request," CT requested a list of AFS's contracts, as well as a list of AFS's top ten clients by contract value from 2014–2016, and AFS complied. (ECF No. 1 ¶ 29.) Further, that upon information and belief, "CT was deceitful in obtaining this information and used it for its own ulterior motives and competitive activities." (*Id.*) According to the Complaint, CT began soliciting business from AFS's customers that was at least in part competitive with AFS. (*Id.* ¶ 30.) In the solicitations, CT allegedly used the Registered Marks and represented itself as a "sister company" to AFS. (*Id.* ¶¶ 30, 32.) AFS alleges that CT's use of the Registered Marks "caused customers to be confused as to the source of the Fraud Software." (*Id.* ¶ 34.)

AFS alleges seven claims for relief and requests punitive damages and a preliminary and permanent injunction. (ECF No. 1.) The seven claims include: (1) Trademark Infringement pursuant to § 32 of the Lanham Act, (*Id.* ¶ 69–77); (2) Unfair Competition and False Designation of Origin pursuant to § 43(a) of the Lanham Act, (*Id.* ¶ 78–83); (3) Unfair and Deceptive Trade Practices pursuant to N.C. Gen. Stat. § 75-1.1, (*Id.* ¶ 84–88); (4) Breach

---

[1] While the Complaint uses these terms interchangeably, (ECF No. 1 ¶ 10), the Court will use the term "Fraud Software" to refer to the actual software and use the term "Registered Marks" to refer to the registered trademarks.

2

of Contract/Breach of Duty of Good Faith, (*Id.* ¶ 89–94); (5) Gross Negligence, (*Id.* ¶ 95–105); (6) Fraud, (*Id.* ¶ 106–16); and (7) Tortious Interference with Business Relations and Expectancies, (*Id.* ¶ 117–24).

Plaintiff moved for a preliminary injunction and expedited discovery, arguing that it will permanently lose its customer relationships and proprietary information if a preliminary injunction is not granted. (ECF No. 11 at 6.) Defendant, in turn, moved to dismiss all seven counts of the Complaint. (ECF No. 17.)

## II. DEFENDANT'S MOTION TO DISMISS

The Court will first address Defendant CT's Motion to Dismiss, pursuant to Rule 12(b)(6). (ECF No. 17.) As a preliminary matter, before addressing the merits of Defendant's motion, this Court will address an evidentiary objection to certain matters in Plaintiff's Opposition to Motion to Dismiss, (ECF No. 19), raised by Defendant. Specifically, Defendant argues that Plaintiff relies on documents outside of the Complaint in its effort to overcome deficiencies in the Complaint. (ECF No. 20 at 2.) Defendant requests that this Court strike all references and arguments by Plaintiff relying on documents related to Plaintiff's motion for preliminary injunction and expedited discovery, if such documents are not attached to, or incorporated by reference in, the Complaint. (*Id.*)

### A. Defendant's Request to Strike

The Court does not generally consider evidence outside that which was pleaded in the complaint when evaluating a motion to dismiss.[2] *E.I. du Pont de Nemours & Co. v. Kolon Indus.,*

---

[2] The Court is, however, instructed to treat "[a] copy of a written instrument that is an exhibit to a pleading [as] a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Because Plaintiff attached

3

*Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("[T]he district court cannot go beyond [the Complaint, as well as documents attached or incorporated into the complaint,] on a Rule 12(b)(6) motion."). "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, then the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Local Rule 7.6 provides that "[r]ather than filing a motion to strike, a party may assert evidentiary objections in its response or reply memorandum to factual allegations contained in memoranda . . . supporting or opposing motions to dismiss." LR 7.6. If an evidentiary objection is raised in the moving party's reply memorandum, "the non-moving party may file a surreply memorandum . . . within seven (7) days addressing only the evidentiary objection." *Id.*

Because CT raised its evidentiary objection in its reply brief, AFS had seven days to file a surreply memorandum, opposing the evidentiary objection. *See* LR 7.6. It failed to do so.[3] For the reasons outlined above, this Court will strike, and therefore not consider, any evidence outside the pleadings, as well as arguments relying on such evidence, in evaluating this Motion to Dismiss.

**B. Standard of Review**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2)

---

a copy of the MSA to the Complaint, (ECF No. 1-1), the Court will treat the attached document as part of the Complaint for all purposes. *See* Fed. R. Civ. P. 10(c).

[3] "Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue." *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) (citing cases).

requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, i.e., a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

**C. Discussion**

Defendant has moved to dismiss all seven counts of the Complaint, and, for the reasons stated below, the Court will grant the motion to dismiss as to all counts. Specifically, the Court will dismiss Plaintiff's two claims made pursuant to federal law for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6); and declines to exercise supplemental jurisdiction over the remaining state law claims which will be dismissed without prejudice.

1. <u>Trademark Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114)</u>

Count 1 of Plaintiff's Complaint alleges a claim of trademark infringement pursuant to § 32 of the Lanham Act. Defendant moves to dismiss this claim first contending that "Plaintiff fails to plead any facts showing that [CT] made a 'trademark use' of Plaintiff's marks." (ECF

No. 18 at 8.) Specifically according to CT, "[AFS] does not allege how the marks were used." *Id.* In addition, Defendant contends that "Plaintiff alleges no facts showing that [CT's] alleged use of Plaintiff's Registered Marks created or is likely to create confusion about the source of the goods or services offered by Core Techs." *Id.*

To state a claim of trademark infringement under 15 U.S.C. § 1114, a plaintiff must allege that the defendant (1) used a mark possessed by plaintiff, (2) "in connection with the sale, offering for sale, distribution, or advertising of any goods or services," (3) in a manner that is "likely to cause confusion." 15 U.S.C. § 1114(1)(a); *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 322 (4th Cir. 2015). The pertinent allegations in AFS's Complaint appear to be as follows:

- "CT used the Registered Marks without authorization, including, but not limited to, on its public website to promote itself. The manner in which the Fraud Software was referenced on CT's public website created confusion about who owned the Registered Marks." (ECF No. 1 ¶ 27.)

- "CT used the Registered Marks in its solicitations of customers without permission of AFS. This created significant confusion in the market and among AFS's customers." (*Id.* ¶ 32.)

- "The misrepresentations by CT and the use of the Registered Marks caused customers to be confused as to the source of the Fraud Software." (*Id.* ¶ 34.)

- "Upon information and belief, without authorization, CT used the Registered Marks for its benefit in e-mail communications, marketing and advertising, including but not limited to, CT's public website." (*Id.* ¶ 72.)

- "CT's actions, including its communications with AFS's customers, in fact, caused AFS's customers to be confused as to the source of the Fraud Software." (*Id.* ¶ 74.)

These allegations demonstrate that Plaintiff has failed to include sufficient facts in the Complaint to plausibly allege that CT's use of the Registered Marks was a prohibited "trademark use" under § 1114(1)(a) or that any such alleged use by CT was "likely to cause confusion" as proscribed by the Lanham Act. 15 U.S.C. § 1114(1)(a). Use of a mark that does not satisfy these two criteria is not trademark infringement. *Radiance*, 786 F.3d at 322. Plaintiff alleges that CT "used" the Registered Marks "on its public website to promote itself," "in its solicitations of customers," and "for its benefit in email communications, marketing and advertising." (*Id.* ¶¶ 27, 32, 72.) In none of the allegations outlined does AFS provide any facts which describe the nature of the use alleged, i.e. how, or in what context, the Registered Marks were actually used or that such use was actually "in connection with the sale, distribution or advertising of goods and services" offered by CT. *See Radiance*, 786 F. 3d at 322. Taking each of the above allegations as true, this Court is unable to reasonably infer that CT has engaged in a use of Plaintiff's trademark that implicates the Lanham Act. *See Dow Jones & Co. v. Int'l Sec. Exch., Inc,* 451 F. 3d 295, 307 (2d Cir. 2006) ("[W]ithout any factual allegations concerning the nature of the threatened use…defendants [are not given] fair notice of the claims against them and does not show, by facts alleged, that [a plaintiff] is entitled to relief.").

Even assuming that Plaintiff has alleged a use of its mark by CT in connection with the offer or advertising of CT's services, Plaintiff cannot point to any facts that support its conclusory allegation that CT's use of the Registered Marks "created confusion" among AFS customers. (*See* ECF No. 1 ¶ 27.) *See Dow Jones & Co.,* 451 F. 3d at 307–08 ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir.

7

2002)). AFS cites *Superior Performers, Inc. v. Family First Life, LLC*, 1:14CV283, 2014 WL 7338923, at *5 (M.D.N.C. Dec. 22, 2014), in support of its argument regarding the sufficiency of its Complaint. (ECF No. 19 at 5.) However in that case, the plaintiff, unlike the Plaintiff here, attached an example of the alleged offending use to the complaint for the court to consider. *Superior Performers*, 2014 WL 7338923, at *5. The court concluded that the "[p]laintiff's allegation *and specific example of such infringement* provide a sufficient basis" at the motion to dismiss stage "to assert a claim that others may likely be confused by the Defendants' use of the [m]ark." *Id.* (emphasis added).

Here, Plaintiff, in addition to failing to plead sufficient facts related to the nature of the use or that such use was done in a manner that would likely cause confusion, provides no such example from which an inference could be drawn of CT's alleged offending conduct. (ECF No. 1.) Nor is AFS's argument that "CT is attempting to impose a heightened pleading standard," (ECF No. 19 at 6), compelling. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Plaintiff's Complaint simply does not include the facts required to support its claim of trademark infringement under § 32 of the Lanham Act. In addition, as discussed in Section II.A. above, this Court will not consider the evidence in AFS's opposition brief, nor the arguments using such evidence, which are outside of the pleadings in the evaluation this claim.

For the reasons outlined, this Court is unable to "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Accordingly,

8

Defendant's motion to dismiss Plaintiff's trademark infringement claim brought pursuant to § 32 of the Lanham Act will be granted.

2. Unfair Competition and False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

Defendant next moves to dismiss Count II of the Complaint made pursuant to § 43(a) of the Lanham Act which Plaintiff captions as "Unfair Competition and False Designation of Origin." (ECF No. 1 at 14.) Defendant argues that "[t]he basis of Plaintiff's Section 43(a) claim is unclear," and, as a result, "[such claim] fails to comport with Rule 8's requirement that [CT] receive fair notice of the claims against it." (ECF No. 18 at 9.) Further, according to Defendant, "Plaintiff appears to attempt to state a claim for false advertising." *Id.* Plaintiff, on the other hand, argues that it has plausibly alleged "unfair competition by false designation of origin under the Lanham Act" and that, as with the § 32 claim, Defendant "seeks to impose a new pleading standard." (ECF No. 19 at 6–7.)

The plain language of § 43(a) of the Lanham Act creates unfair competition causes of action for false association[4] and false advertising. 15 U.S.C. § 1125(a).[5] *See Belmora LLC v. Bayer*

---

[4] *Belmora* notes that courts sometimes denominate Lanham Act § 43(a)(1)(A) claims as "false designation" claims and that "the terms can often be used interchangeably." *Belmora LLC v. Bayer Consumer Care AG*, 819 F. 3d 697, 705 n.4 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 1202 (2017).

[5] The text of § 43(a) is as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another

9

*Consumer Care AG*, 819 F.3d 697, 706 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 1202 (2017); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). Subsection A "creates liability for statements as to affiliation, connection and association of goods" and is a false association or a false designation of origin claim; while Subsection B creates liability for those who "misrepresent[ ] the nature, characteristics, qualities or geographic origin of goods," which is the false advertising claim. *Belmora*, 819 F.3d at 705 n.4, 706 (internal quotation marks omitted). The plain language of § 43 does not require that a plaintiff either possess or use a trademark as an element of the claim. *Id.* Rather, "[u]nder § 43(a), it is the defendant's use in commerce—whether of an offending 'word, term, name, symbol, or device' or of a 'false or misleading description [or representation] of fact'—that creates the injury under the terms of the statute." *Id.* (quoting 15 U.S.C. § 1125(a)).

According to Plaintiff, "AFS pled each of the[ ] elements" of a false designation of origin claim. (ECF No. 19 at 7.) To state a claim for false designation of origin, a plaintiff must allege:

> (1) a defendant use[d] a designation; (2) in interstate commerce; (3) in connection with goods and services; (4) which designation is likely to cause confusion, mistake or deception as to origin, sponsorship, or approval of defendant's goods or services; and (5) plaintiff has been or is likely to be damaged by these acts.

---

> person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

*Superior Performers, Inc.*, 2014 WL 7338923, at *4.[6] To support its assertion, AFS specifically references paragraphs 79–80 of its Complaint and then cites as specific examples of CT's wrongful conduct evidence outside of the pleadings. (ECF No. 19 at 7.) As in this Court's evaluation of Plaintiff's § 32 claim, the Court will not consider any evidence outside of the pleadings, or arguments based on such evidence, in consideration of this claim. Rather, the Court must look only to the pleadings and documents attached thereto to evaluate its sufficiency.

Paragraphs 79 and 80 of the Complaint read as follows:

- "Upon information and belief, CT unlawfully took federally [sic] trademarks, customer lists, Deliverables, Source Code and technology to directly compete against AFS in interstate commerce." (ECF No. 1 ¶ 79.)

- "Upon information and belief, CT made false statements to AFS's customers or potential customers regarding its association to AFS as a sister company that were sufficiently material to influence purchasing decisions and directly compete with AFS." (*Id.* ¶ 80.)

Both these allegations are devoid of facts sufficient to put CT on notice of the alleged offending conduct by CT.[7] With respect to Paragraph 79, it is simply unclear how or why AFS

---

[6] The Fourth Circuit has also held that false designation of origin and trademark infringement claims have the same elements. *Lamparello v. Falwell*, 420 F.3d 309, 312–13 (4th Cir. 2005); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001). While the elements are substantially similar, because Plaintiff's claim for false designation of origin involves an alleged misrepresentation (the term "sister company"), and not a misused trademark, the elements as set forth in *Superior Performers* are more applicable here.

[7] Though not specifically referenced in Plaintiff's brief, Paragraph 81 of the Complaint alleges, "CT made false statements regarding its involvement and role with the [Fraud Software] that were sufficiently material to influence purchasing decisions." (ECF No. 1 ¶ 81.) This allegation is likewise devoid of factual matter upon which the Court can reasonably infer that such statements were either false or misleading as required by § 43(a).

argues this allegation furthers its false designation claim under § 43(a). (*Id.* ¶ 79.) Section 43(a) requires use of a "word, term, name, symbol, or device," 15 U.S.C. § 1125(a), however, Plaintiff does not allege any such "use" in its Paragraph 79. (ECF No. 1 ¶ 79.) The allegation in Paragraph 80, however, does appear to fall more squarely within the purview of a § 43(a) claim. CT argues that the term "sister company" is not false or misleading when referring to the two companies' relationship, (ECF No. 18 at 10), however, Plaintiff maintains that the term is misleading (ECF No 19 at 8).[8] In addition to the two allegations AFS highlights in its brief, the following allegations in AFS's Complaint appear relevant and therefore will be considered:

- "In addition to being a vendor of AFS, CT also holds a 20% membership interest in AFS." (ECF No. 1 ¶ 5.)

- "Also in the Spring of 2017, CT began contacting AFS's customers to solicit business from those customers that was in whole or in part competitive with AFS. In seeking to solicit that business, CT falsely represented to numerous customers that it was a "sister company" of AFS. These misrepresentations created significant confusion among AFS customers." (*Id.* ¶ 30.)

- "CT was not and is not a sister company of AFS." (*Id.* ¶ 31.)

- "CT improperly held itself out as a sister company or other affiliate of AFS and misrepresented its role with the Fraud Software to AFS customers and the public. Upon information and belief, CT was motivated to harm AFS by disrupting its relationship with customers and divert business to itself." (*Id.* ¶ 37.)

---

[8] The parties spend pages trading arguments in their briefs as to why the term "sister company" is or is not misleading, quoting Merriam-Webster, Black's Law Dictionary, and Investopedia. (ECF No. 18 at 10–11; ECF No. 19 at 7–8; ECF No. 20 at 4–5.)

An examination of these allegations, in addition to those highlighted by Plaintiff, leads this Court to conclude that Plaintiff's § 43(a) claim fails for similar reasons that Plaintiff's first claim failed—a failure to allege sufficient facts to support its conclusory allegations. Thus, to the extent that AFS relies on the arguments it made for its § 32 claim, (*see* ECF No. 19 at 6), the Court does not find such arguments persuasive in support of this claim.

Here, to support its § 43(a) claim, Plaintiff fails to allege sufficient facts for this Court to infer that the use of the term "sister company" by CT was either false or misleading or "likely to cause confusion, mistake, or deception." Although Plaintiff states, plainly, that "CT was not and is not a sister company of AFS," it does not provide sufficient facts to support that conclusion. (ECF No. 1 ¶ 31.) The only information the Complaint provides about the parties' corporate ownership structure is that CT owns a 20% membership share in AFS. (*Id.* ¶ 5.) The Complaint also states that the two companies were working together under the MSA at the time those statements were made. (*See id.* ¶¶ 10, 30, 49.)[9] These allegations do not support a reasonable inference that the term "sister company" is either "false or misleading," with respect to the parties' relationship. The Complaint provides no other facts about the parties' relationship or the allegedly misleading nature of the term "sister company" to support such inference. For these reasons, the Court concludes that Plaintiff has failed to allege "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Accordingly, Defendant's motion to dismiss Plaintiff's false designation of origin claim brought pursuant to § 43(a) of the Lanham Act will be granted.

---

[9] The parties entered into the MSA on January 1, 2015, (ECF No. 1 ¶ 10), and CT terminated the MSA on September 1, 2017, (*id.* ¶ 49). Accordingly, the MSA was still operative in the Spring of 2017 when these alleged offending acts occurred. (*See id.* ¶ 30.)

### 3. Remaining State Law Claims

Of the seven claims alleged in AFS's Complaint, this Court has determined that the two claims arising under federal law must be dismissed for failure to state a claim pursuant to Rule 12(b)(6). As a result, only Plaintiff's five state law claims remain before this Court. (*See* ECF No. 1.) Notwithstanding the Court's subject matter jurisdiction over this case, it may, in its discretion, decline supplemental jurisdiction over the remaining state claims. *See Shanaghan v. Cahill,* 58 F.3d 106, 110 (4th Cir. 1995). 28 U.S.C. § 1367(c) specifically provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim under subsection (a) if, [as in this case], the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has instructed that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Melon Univ. v. Cohill*, 484 U.S 343, 350 (1988). In so doing, "[w]hen the balance of these factors indicates that a case properly belongs in state court, . . . the federal court should decline the exercise of jurisdiction." *Id.* (footnote omitted).

Under the circumstances of this case, the Court finds that the principles of judicial economy, convenience, fairness to the parties, and comity favor dismissal. As explained by the Fourth Circuit, its "precedents evince a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction." *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010); *see Waybright v. Frederick Cty., Md.*, 528 F.3d 199, 209 (4th Cir. 2008) (recognizing that in cases where all "federal questions [are] gone, there may be

the authority to keep [the case] in federal court[,] . . . but there is no good reason to do so"). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law [rendered by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Further, where as in this case, the federal claims have been eliminated early in this litigation, prior to an initial pretrial conference, entry of a scheduling order, or commencement of any discovery, this factor weighs in favor of dismissal. *See Cohill*, 484 U.S. at 351 ("When the single federal-law claim in the action was eliminated at any early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction.").

Likewise, considerations of judicial comity weigh in favor of this Court declining to hear these state claims. "[J]udicial comity . . . operates to assure judicial efficiency and to reflect abiding respect for other courts." *See Gray v. Petoseed Co.*, 985 F. Supp. 625, 632 (D.S.C. 1996) (internal quotation marks omitted), *aff'd*, 129 F.3d 1259 (4th Cir. 1997). Lastly, both parties to this lawsuit are citizens of North Carolina and will not be unduly inconvenienced by pursuing their issues in state court if they choose to do so.

In light of the above considerations, the Court concludes that retaining jurisdiction over this case would be inappropriate. Accordingly, this Court will exercise its discretion and dismiss the remaining claims without prejudice so they may be brought in state court.

### III.   CONCLUSION

Because the Court will grant Defendant's Motion to Dismiss with respect to all counts, Plaintiff's Motion for Preliminary Injunction and Expedited Discovery will be rendered moot.

For the reasons outlined herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss, (ECF No. 17), is GRANTED as follows: (1) Plaintiff's trademark claims, Counts I and II of the Complaint, shall be DISMISSED for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (2) Plaintiff's five remaining state law claims, Counts III–VII of the Complaint, shall be DISMISSED WITHOUT PREJUDICE as this Court declines to exercise pendent jurisdiction over said claims pursuant 28 U.S.C. § 1367(c)(3) .

IT IS FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction and Expedited Discovery, (ECF No. 10), is DENIED AS MOOT.

A Judgment dismissing this action will be entered separately.

This, the 29th day of September, 2018.

/s/ Loretta C. Biggs
United States District Judge